SCHWEYER IMPORT–SCHNITTHOLZ GMBH, Plaintiff,

v.

GENESIS CAPITAL FUND, L.P., a Delaware Limited Partnership; B. Hauptman and Associates, Inc., a Delaware Corporation; Bruce Arthur Hauptman, Individually; and William H. Hurlin, Individually, Defendants.

No. 4:03–cv–40648.

United States District Court, S.D. Iowa, Central Division.

April 22, 2004.

Roger T. Stetson, Michael R. Reck, Belin, Lamson, McCormick, Zumback & Flynn, PC, Des Moines, IA, Stephen A. Hutchinson, E. Bradley Litchfield, Hutchinson, Cox, Coons, Dupriest, Orr & Sherlock, PC, Eugene, OR, for Plaintiff.

Jodi R. Lazar, Timothy S. Dejong, Stoll Stoll Berne Firm, Portland, OR, for Defendants.

## ORDER ON DEFENDANT'S MOTION TO DISMISS

GRITZNER, District Judge.

This matter comes before the Court on Defendant's Motion to Dismiss for failure to join an indispensable party pursuant to Fed. R.Civ.P. 12(b)(7) ("Rule 12(b)(7)"). A hearing was held on February 23, 2004. Plaintiff was represented by Michael Reck. Defendants were represented by Timothy DeJong of Portland, Oregon, and Brent Appel of Des Moines.

## I. FACTS

Plaintiff Schweyer Import—Schnittholz GMBH ("Schweyer") is a German corporation with its principal place of business in Mannheim, Germany. Schweyer entered into a contract to purchase certain timber products from Greater Asian Development Corporation, PTE Ltd. ("GADC"), a Singapore limited private company which conducts business internationally including in the State of Oregon. Defendant Genesis Capital Fund, L.P. ("Genesis"), is a Delaware limited partnership and a major shareholder of Griffith International Holdings Pte. Ltd. ("Griffith International"), and GADC. Defendants Bruce Hauptman, William Hurlin, and Hauptman and Associates were owners, officers, directors, or agents of GADC and/or Genesis. Hauptman and Hurlin are residents of Iowa. Hauptman and Associates is a Delaware corporation with its principal place of business in Iowa. Genesis is Delaware limited partnership with its principal place of business in Iowa. Hauptman, Hurlin, Hauptman and Associates, and Genesis are collectively referred to herein as "Iowa Defendants" or "Defendants".

Schweyer also named as Defendants the following alien corporations and individuals: (1) Greater Asian Development Corporation Forest Products Division Pte. Ltd. ("GADC Forest Products"), a Singapore company which was the former name of GADC; (2) Griffith International, a Singapore company that GADC currently operates under; (3) Greater Lao Timber Corp. ("Lao Timber"), a Lao joint venture of which GADC owned seventy-five percent; (4) Intercontinental Business Development Corporation ("IBDC"), a major shareholder of GADC; and (5) individual claims against Stephen J. Griffith and Christos Hadzilias, owners, directors, officers, or agents of GADC Forest Products. Griffith and Hadzilias are both residents of Australia. These alien corporations and individuals are collectively referred to herein as the "Alien Defendants."

This case arises from the alleged breach of a settlement agreement entered into by Schweyer and GADC following a dispute over a shipment of allegedly defective pine scantlings. Because GADC allegedly failed

to make payments as required under the agreement, Schweyer filed this action to recover damages. None of the Iowa Defendants nor the Alien Defendants were a party to the settlement agreement.

## II. PROCEDURAL HISTORY[1]

On March 21, 1997, Schweyer filed this lawsuit in the United States District Court for the District of Oregon; an amended complaint was filed almost three years later on February 1, 2000. The amended complaint alleged breach of contract and improper conduct. Schweyer's theory of liability as to the Iowa Defendants and the Alien Defendants was that, as owners, stockholders, officers/directors, partners, and agents of GADC, they controlled the operations and finances of GADC and prevented GADC from performing under its settlement agreement. Schweyer further alleged the Iowa Defendants and the Alien Defendants manipulated the financial and commercial affairs of GADC, causing it to breach the settlement agreement. Schweyer also argued GADC's controlling shareholders placed the corporation into liquidation in Singapore without notifying Schweyer, then stripped all assets from the corporation. Schweyer contended that GADC was the alter ego of the Iowa Defendants and the Alien Defendants; as such, they should step into the shoes of GADC and perform its obligations under the settlement agreement.

On March 17, 2000, the Iowa Defendants filed a motion to dismiss for lack of personal jurisdiction, arguing they were Iowa residents and had no contact with Oregon. The Iowa Defendants further argued that Schweyer had not met its burden of showing personal jurisdiction under the alter ego theory. On June 9, 2000, IBDC filed its own motion to dismiss for lack of personal jurisdiction, arguing Schweyer failed to properly serve and failed to prove the necessary elements of personal jurisdiction under the alter ego theory. In resistance to those motions, Schweyer argued that the court clearly had jurisdiction over GADC, and personal jurisdiction should be imputed to the Iowa De-

fendants and to IBDC under the alter ego theory. On October 10, 2000, while those motions were pending, Schweyer filed a motion for the entry of default and default judgment against GADC; the court granted the motion on December 5, 2000.

On December 2, 2002, the Iowa Defendants and IBDC filed a joint motion to dismiss for lack of subject matter jurisdiction, arguing diversity jurisdiction did not provide for an alien plaintiff to sue alien defendants. On July 10, 2002, during a hearing on the pending motions to dismiss, Schweyer made an unopposed oral motion to vacate the default judgment against GADC and to dismiss *all* the Alien Defendants, including GADC. The Court granted the motion.

On September 18, 2002, United States Magistrate Judge Coffin ("Magistrate Judge Coffin") filed a Findings and Recommendations ("F & R"), reasoning the entire case should be dismissed for lack of subject matter jurisdiction and failure to join an indispensable party. Schweyer filed an objection to the F & R, and in response, Magistrate Judge Coffin filed an Amended F & R, again reasoning the motion to dismiss for lack of subject matter jurisdiction should be granted and motions to dismiss for lack of personal jurisdiction should be denied as moot.

In an amended F & R, Magistrate Judge Coffin clarified that the motion should be granted because Schweyer was trying to circumvent subject matter jurisdiction by dismissing the Alien Defendants stating, "[t]he same defendants that plaintiff wants to characterize as separate and independent of GADC for purposes of subject matter jurisdiction are characterized as the alter ego of GADC for purposes of personal jurisdiction. Courts that have addressed these competing arguments have recognized the inconsistency and declined to exercise jurisdiction."

However, in an order dated May 16, 2003, United States District Judge Michael Hogan did not adopt Magistrate Judge Coffin's F & R regarding the court's subject matter jurisdiction stating, "[a]lthough Judge Coffin's reasoning is appealing, I decline to attribute

---

1. The Court has redacted the long and complicated procedural history of this case and only mentions those proceedings which are pertinent to the Motion currently before the Court.

the Singapore Citizenship of … GADC to … the Iowa defendants. Therefore, complete diversity may now exist, although the court has not considered whether GADC is an indispensable party." Judge Hogan recommitted the matter to Magistrate Judge Coffin for consideration of the Iowa Defendants' motion to dismiss for lack of personal jurisdiction.

On June 18, 2003, Defendants filed an Amended Motion to Dismiss alleging lack of personal jurisdiction pursuant to Fed. R.Civ.P. 12(b)(2), failure to join an indispensable party pursuant to Fed.R.Civ.P. 12(b)(7), and improper venue pursuant to Fed. R.Civ.P. 12(b)(3). Defendants filed an alternative Motion to Transfer to the Southern District of Iowa pursuant to 28 U.S.C. § 1404(a). The parties consented to proceed before a U.S. Magistrate Judge. On November 12, 2003, Magistrate Judge Coffin granted Defendants' motion to transfer and denied the Rule 12(b)(2) and the Rule 12(b)(7) motions as moot. This Court received the case on November 18, 2003.

On December 4, 2003, Defendants filed the present Motion to Dismiss pursuant to Rule 12(b)(7) for failure to join an indispensable party under Rule 19. Defendants argue the case cannot go forward without GADC because it is the principal party to the contract at issue in this case, and since joinder of GADC would destroy diversity, this case should be dismissed. Defendants assert Schweyer is trying to circumvent the diversity statute by using the alter ego doctrine to avoid the joinder of a nondiverse principal party to the settlement agreement.

Schweyer resists this motion, arguing Defendants attempt to avoid litigating the merits of this case and that this motion is not supported by the law of the Eighth Circuit.

### III. STANDARD FOR MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(7) provides for dismissal of a suit if the plaintiff failed to join an indispensable party under Rule 19. Fed.R.Civ.P. 12(b)(7). "The proponent of a motion to dismiss under Fed. R.Civ.P. 12(b)(7) has the burden of producing evidence showing the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the absence." *De Wit v. Firstar Corp.,* 879 F.Supp. 947, 992 (N.D.Iowa 1995) (quoting *Citizen Band Potawatomi Indian Tribe of Okla. v. Collier,* 17 F.3d 1292, 1293 (10th Cir.1994)). This burden "can be satisfied by providing 'affidavits of persons having knowledge of these interests as well as other relevant extra-pleading evidence.'" *Id.* (quoting *Citizen Band Potawatomi Indian Tribe of Okla.,* 17 F.3d at 1293 (quoting *Martin v. Local 147, Int'l Bro. of Painters,* 775 F.Supp. 235, 236–37 (N.D.Ill.1991) (quoting 5A Charles A. Wright & Arthur R. Miller, Fed. Prac. & Pro., § 1359, at 427 (1990)))).

"The purpose of Federal Rule of Civil Procedure 19 is to permit joinder of all materially interested parties to a single lawsuit so as to protect interested parties and avoid waste of judicial resources." *Moore v. Ashland Oil, Inc.,* 901 F.2d 1445, 1447 (7th Cir. 1990). The Court must first determine whether the presence of a party "is essential to the litigants' complete relief, or when the party to be joined must be present to protect its own or another party's interests." *De Wit,* 879 F.Supp. at 991. "If the court finds that the requirements of Rule 19(a) are satisfied, it may dismiss the action if, in weighing four additional factors specified in Rule 19(b), those factors so indicate." *Id.* Therefore, the Court must first determine whether in GADC's absence, those already party to this action are prevented from obtaining complete relief as well as the effect of that relief, if any, upon GADC in its absence.

### IV. DISCUSSION

#### A. Rule 19(a) Analysis

Rule 19(a) states in pertinent part:

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the dispo-

sition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed.R.Civ.P. 19(a).

A party is a necessary party under Rule 19(a) if it meets either the criteria under Rule 19(a)(1) or Rule 19(a)(2). *Rivera Rojas v. Loewen Group Intern., Inc.*, 178 F.R.D. 356, 361 (D.P.R.1998). The criteria under Rule 19(a)(1) focuses on whether relief can be afforded the existing parties in the absence of the party in question, whereas, Rule 19(a)(2) focuses on the effects the litigation would have on the absent party. *Id.*

In the present case, the parties concede that GADC is a necessary party under Rule 19(a) because it was a principal party to the settlement agreement at issue in the case. *See id.* ("Generally, in breach of contract actions, all parties to the contract are necessary ones."); *Acton Co., Inc. of Mass. v. Bachman Foods, Inc.*, 668 F.2d 76, 78 (1st Cir.1982) (finding that the nondiverse parent corporation in the breach of contract action was a necessary and indispensable party to the action brought against the subsidiary because the parent corporation signed the letter of intent and the purchase agreement at issue in the case).

Therefore, GADC should be joined as a party as long as such "joinder will not deprive the court of jurisdiction over the subject matter." Fed.R.Civ.P. 19(a). Since joining GADC would destroy diversity jurisdiction, the Court must determine whether "in 'equity and good conscience' the action should proceed among the parties before it, or should be dismissed." Fed.R.Civ.P. 19(b).

### B. Rule 19(b) Analysis

Rule 19(b) states:

If a person as described in subdivision (a)(1–2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should

be dismissed, the absent person thus being regarded as indispensable. The factors … include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provision in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed.R.Civ.P. 19(b).

In addition to the factors in Rule 19(b), there are "four 'interests' that must be examined in each case to determine whether, in equity and good conscience, the court should proceed without a party whose absence from the litigation is compelled." *De Wit,* 879 F.Supp. at 994 (quoting *Nichols v. Rysavy,* 809 F.2d 1317, 1332 (8th Cir.1987) (quoting *Provident Tradesmens Bank & Trust, Co. v. Patterson,* 390 U.S. 102, 109–11, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968))). The four interests the Court must consider are as follows:

First, the plaintiff has an interest in having a forum …. Second, the defendant may properly wish to avoid multiple litigation, or inconsistent relief, or sole responsibility for a liability he shares with another …. Third, there is the interest of the outsider whom it would have been desirable to join …. Fourth, there remains the interest of the courts and the public in complete, consistent, and efficient settlement of controversies.

*De Wit,* 879 F.Supp. at 994 (quoting *Nichols,* 809 F.2d at 1332) (quoting *Provident Tradesmens Bank & Trust Co.,* 390 U.S. at 109–11, 88 S.Ct. 733).

Defendants argue that Schweyer attempts to thwart the jurisdiction statute by avoiding joinder of a nondiverse party that is a principal party to the contract at issue by asserting the alter ego doctrine. *See Freeman v. Northwest Acceptance Corp.,* 754 F.2d 553, 558 (5th Cir.1985) (finding under the alter ego theory that the nondiverse subsidiary was an indispensable party in an action

brought against the parent corporation because it was a principal party to the contract at issue). Defendants point out that Magistrate Judge Coffin initially recommended dismissal of this case on that basis and asks the Court to adopt his reasoning. Defendants also argue that in a suit for breach of contract, a party which is primarily liable on the disputed contract is an indispensable party. *Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.*, 20 F.3d 987, 989–91 (9th Cir.1994) (reasoning that the signatory to the contract at issue in the case would have been an indispensable party).

Schweyer concedes that the present case is essentially an alter ego case, and as such, it is seeking to pierce the corporate veil. Schweyer believes Defendants, as controlling shareholders of GADC, are responsible for its losses, and therefore GADC and Defendants are joint obligors. Schweyer argues the *Nike* case is of no assistance to the Court because the issue before that court was whether the district court had correctly applied the anti-assignment statute, and the court's indispensable party discussion was merely dicta. *Id.*

Although in *Nike* the Ninth Circuit was addressing different issues, its diversity discussion provides helpful analysis in the present case. *Nike* arose from a dispute over several contracts between Nike International, Inc. ("NIL"), a Bermuda corporation, and Commercial Iberica de Exclusivas Departivas, S.A. ("Cidesport"), a Spanish corporation. *Id.* at 989. NIL was a wholly owned subsidiary of Nike, Inc. ("Nike"), an Oregon corporation. Three days before the complaint was filed, NIL assigned its rights to Nike, who then filed the action in the District Court of Oregon. *Id.* NIL was not named as a party in the action. *Id.* Cidesport moved to dismiss, alleging the assignment had been collusive for the purpose of creating diversity jurisdiction. *Id.* The district court granted the motion, finding Nike had not rebutted the presumption of collusion; however, upon a motion to reconsider, Nike successfully persuaded the court that the "assignment of claims was made for good business reasons and not for purposes of improper collusion."

*Id.* Cidesport appealed the decision and renewed its jurisdictional challenge. *Id.*

The *Nike* district court suggested that the assignment did not "create" diversity because even if NIL had been made a party, diversity would have existed. *Id.* at 990. In refuting this reasoning, the Ninth Circuit explained that "we cannot disregard either [NIL's] site of incorporation, Bermuda, or its principal place of business, which Nike alleges is Oregon, when testing for complete diversity." *Id.* Therefore, if NIL had been made a plaintiff in the action, the court would not have had subject matter jurisdiction because the diversity statute does not provide for a foreign plaintiff suing a foreign defendant. *Id.* at 991 (citing *Cheng v. Boeing Co.*, 708 F.2d 1406, 1412 (9th Cir.1983)).

The court went on to reason:

Moreover, if Nike had filed this suit as the sole plaintiff, it could not have relied on the district court's supplemental jurisdiction to add NIL and NIL's claims. *Prior to the assignment, NIL was an indispensable party, see Harrell & Sumner Contracting v. Peabody Petersen,* 546 F.2d 1227, 1229 (5th Cir.1977) (joint obligees are indispensable parties to action for enforcement of that obligation), *whose presence, as we have just demonstrated, would have defeated diversity.*

*Id.* at 991 (emphasis added). Nike argued that *after* the assignment, NIL was not an indispensable party; however, the court reasoned,

we are considering NIL's status if it had not assigned its claims. The contracts upon which Nike sued were entered into between Cidesport and NIL. The signatories were representatives of Cidesport and NIL. The licensing agreement authorized defendants to use Spanish trademarks owned by NIL. NIL notified Cidesport of its intent to terminate the distribution and licensing agreements. Thus, it is clear that NIL was the principal party to the contracts. Nike may also have an interest in these contracts but that interest does not dilute the importance of NIL's role.

*Id.* at 991 n. 7.

Contrary to Schweyer's assertion, the court's reasoning in *Nike* is instructive in the

present case. NIL was an alien corporation; therefore, if NIL brought an action against Cidesport, also an alien corporation, diversity jurisdiction would have been lacking. *Id.* at 989. To avoid that roadblock, NIL assigned its interest to its U.S. corporate parent, Nike. *Id.* The court reasoned this maneuvering could not defeat dismissal because NIL was a necessary party to the lawsuit. *Id.* at 991.

In the present case, Schweyer initially named GADC as a Defendant, but when faced with dismissal because GADC's presence destroyed diversity, Schweyer voluntarily dismissed GADC as a party. Now Schweyer contends GADC is not indispensable to the action because the real parties in interest, the shareholders, are named as Defendants. However, Schweyer does not explain how, as signatory to the settlement agreement, GADC is not indispensable in this action. As in *Nike,* the Iowa Defendants may also have an interest in this action, but that does not dilute the importance of GADC's role. *See id.* at 991.

The Defendants also suggest that the reasoning of the Fifth Circuit Court of Appeals is instructive in *Freeman v. Northwest Acceptance Corp.,* a case analogous to the case at bar. *Freeman,* 754 F.2d at 558. The *Freeman* plaintiffs, stating they were citizens of Texas, brought a conversion action in federal court based on diversity against Oregon corporation Northwest Acceptance Corporation ("Northwest"). However, the alleged conversion was committed by Northwest's wholly-owned subsidiary, First Commercial Credit Corporation ("FCC"), a Colorado corporation which was not named in the suit. *Id.* at 554. The plaintiffs claimed FCC was the alter ego of Northwest, and therefore Northwest was the responsible party. *Id.* at 556. The case proceeded to trial, and the jury found in favor of the plaintiff. *Id.* at 555.

On appeal, the Fifth Circuit determined the plaintiffs were actually citizens of Colorado, not Texas. *Id.* It further found that FCC was an indispensable party whose state of incorporation could not be ignored. *Id.* at 558. "Northwest, as alter ego of First Commercial, acquired the Colorado citizenship of

First Commercial for purposes of subject-matter jurisdiction of this action." *Id.* The court "refused to elevate form over substance," reasoning "[a] contrary conclusion can be reached only by blind adherence to form and equally blind disregard of the facts." *Id.*

Schweyer argues *Freeman* has not been followed by any other circuit and it is at odds with the greater weight of authority as articulated in the *Wright* treatise. Wright states:

> The indispensability of others who occasionally become involved in corporate litigation also must be determined in terms of the facts and circumstances of the specific case. For example, in cases involving parent and subsidiary corporations or actions brought after a corporation has been dissolved, the obligation to join the related or dissolved corporation will depend on whether the suit necessarily embraces its interests, as well as whether complete relief can be rendered in its absence.

7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1613 (3d ed.2001).

Schweyer's assertions are inaccurate. The First Circuit *has* cited *Freeman* affirmatively for the proposition that the parent corporation of a wholly independent subsidiary was an indispensable party whose presence destroyed diversity in *H.D. Corp. of Puerto Rico v. Ford Motor Co.,* 791 F.2d 987, 993 (1st Cir.1986).

In *Ford,* plaintiffs were Delaware corporations and successors in interest to two Puerto Rican car dealerships whose inventories were damaged as a result of a hurricane. *Id.* at 988. They entered into repurchase and termination negotiations under the Automobile Dealer's Day ("the Act") with defendants Ford Inc., a Delaware corporation, and Ford Carribean, a Puerto Rico corporation. *Id.* After defendants refused to repurchase approximately $500,000 in parts and accessories, the plaintiffs filed a lawsuit in federal court against the defendants alleging two violations of the Act and five state law claims. *Id.* at 989. The court found the plaintiffs failed to state a claim under the Act and dismissed the state claims. *Id.*

On appeal, plaintiffs argued that even if the causes of action under the Act were dismissed, the district court should have allowed the state claims under the diversity statute against defendant, Ford Carribean, and dismissed nondiverse defendant Ford, Inc. *Id.* at 992. However, citing *Freeman,* the First Circuit reasoned the district court correctly dismissed the action because nondiverse parent corporation, Ford, Inc., was an indispensable party to the action since it was a signatory to the settlement and termination agreement at issue in the case. *Id.* at 993 ("Thus, even if, as plaintiffs contend, Ford Carribean bears joint and several liability with Ford for the conduct alleged in the complaint, it would be highly impractical to permit plaintiffs' action to proceed solely against Ford Carribean.").

District courts in the Eighth Circuit have also affirmatively cited *Freeman. See, e.g., Polanco v. H.B. Fuller Co.,* 941 F.Supp. 1512, 1517 (D.Minn.1996) ("[I]f a parent were sued as a result of activities of a subsidiary, the alter ego doctrine would attribute the subsidiary's place of incorporation to the parent even if such resulted in destroying complete diversity."); *Dou Yee Enterprises (S) PTE, Ltd. v. Advantek, Inc.,* 149 F.R.D. 185, 189 (D.Minn.1993) (dismissing an action brought by a Singapore plaintiff because the court found all four factors under Rule 19(b) weighed in favor of the indispensability of defendant's Singapore subsidiary who was a primary actor in the alleged fraudulent conduct and if absent, (1) the subsidiary would be prejudiced; (2) there would be no way to lessen that prejudice; (3) plaintiff's potential judgment could not be adequately shaped; and (4) Singapore provided an adequate alternative forum).

In addition, district courts outside the Eighth Circuit have affirmatively cited *Freeman. See Extra Equipamentos E Exportacao, Ltda, Persio D. Briante v. Case Corp.,* 2002 WL 1888540, at *4 (N.D.Ill. Aug.15, 2002) (finding the Brazilian subsidiary was an indispensable party in a breach of contract and fraud action brought against the U.S.

parent corporation because the Brazilian plaintiff and the Brazilian subsidiary entered into the settlement agreement at issue in the action); *Pyramid Secs., Ltd. v. Int'l Bank,* 726 F.Supp. 1377, 1386 (D.D.C.1989) ("Thus, for purposes of diversity jurisdiction, a corporation may have multiple citizenships: its place of incorporation, its principal place of business, and the place of incorporation of its alter ego subsidiary.").

Schweyer argues there is no binding Eighth Circuit authority on the issue and proffers that *United States ex rel. Steele v. Turn Key Gaming, Inc.,* 135 F.3d 1249 (8th Cir.1998), illustrates the Eighth Circuit's *reluctance* to dismiss a party as indispensable.

In *Steele,* the president of the Oglala Indian Tribe brought an action against a casino gaming company and its president arising out of temporary contracts between the tribe and defendants. *Id.* at 1250. The suit alleged the contracts were void under federal law and sought the return of the monies to the tribe. *Steele,* 135 F.3d at 1250. The district court dismissed the action, reasoning the tribe was a party which should have been joined, but it could not be joined due to sovereign immunity making it an indispensable party under Rule 19(b). *Id.* at 1251. The Eighth Circuit reversed, finding the district court erred in finding the tribe would be prejudiced if the action proceeded in its absence because any prejudice would be remote and minor. *Id.* at 1252. Schweyer argues *Steele* demonstrates the Eighth Circuit's concern for *practical versus theoretical or hypothetical possibility of prejudice* and its *presumption* against dismissal for nonjoinder.[2]

■■■ The Eighth Circuit's holding in *Steele* in no way established a *policy* of reluctance to dismiss a case under Rule 19(b); rather, the court simply ruled that under the facts of the case, dismissal was not warranted. *Id.* In contrast, the Eighth Circuit reasoned in *Spirit Lake Tribe v. North Dakota,* 262 F.3d 732, 747–48 (8th Cir.2001), that the district court correctly dismissed the action

**2.** Schweyer cites *Teamsters Local Union No. 171 v. Keal Driveaway Co.,* 173 F.3d 915, 918 (4th Cir.1999), for the proposition that there is a strong presumption against dismissal for non-

joinder. However, in *Keal,* the district court dismissed the action, finding an indispensable party had not been joined, and the Fourth Circuit affirmed. *Id.*

under Rule 12(b)(7) because the plaintiff was unable to join the federal government as a party.[3] The Eighth Circuit reasoned, "a determination of indispensability in one case will seldom be completely dispositive in another . . . ." *Id.* at 747.[4]

## C. Applying the Rule 19(b) Factors

■ With this authority as a backdrop, the Court must determine whether GADC is an indispensable party in the present case by considering the following factors: (1) whether GADC would be prejudiced if absent; (2) whether that prejudice could be lessened; (3) whether Schweyer's potential judgment could be adequately shaped in GADC's absence; and (4) whether there is an adequate alternative forum.

### 1. Prejudice to Defendants

Schweyer argues that Defendants have not offered any plausible suggestion why complete relief could not be awarded to Schweyer in GADC's absence. Schweyer asserts that under its theory of the case, GADC and Defendants are joint obligors, and therefore GADC is not indispensable. 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1613 (3d

ed. 2001) ("Today the joinder of obligors is left to plaintiff's discretion by many courts and plaintiff may select defendants without being concerned about dismissal because of nonjoinder. Joint obligors thus typically are treated as Rule 19(a) parties, but are not deemed indispensable under Rule 19(b).").[5]

Defendants assert they will be prejudiced if Schweyer is allowed to bypass the rule of shareholder immunity and proceed directly against them. Iowa Code § 490.622(2) ("Unless otherwise provided in the articles of incorporation, a shareholder of a corporation is not personally liable for the acts or debts of the corporation."). Defendants argue Schweyer has not tried to collect the alleged debt from GADC by entering into the liquidation proceeding; instead, Schweyer voluntarily dismissed GADC, concluding it is more convenient to pursue the shareholders directly.

Schweyer has assumed different postures at various points in this proceeding. It originally named GADC as a party to the action and readily admits in addition to itself, GADC was the only signatory to the settlement agreement. When the Iowa Defendants and IBDC argued that the District

---

**3.** In its surreply brief, Schweyer acknowledges that the Eighth Circuit did uphold dismissal under Rule 12(b)(7) in *Nichols v. Rysavy*, 809 F.2d 1317 (8th Cir.1987). Schweyer argues *Nichols* is not applicable in the present case.

Although the facts are distinct from the case at bar, *Nichols* provides direction from the Eighth Circuit on Rule 19(b) analysis and dispels Schweyer's assertion that the Eighth Circuit is "reluctant" to dismiss a case under Rule 12(b)(7). In *Nichols*, the plaintiff was unable to join the United States as a party because of sovereign immunity. *Id.* at 1331. The Eighth Circuit analyzed the four factors set forth by the Supreme Court in *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 109–11, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968), and determined the United States was an indispensable party. *Id.* at 1332–33.

**4.** Schweyer asserts that very few cases should be terminated due to the absence of nondiverse parties unless the court first determines whether the parties' nonjoinder makes an equitable resolution impossible. *Jaser v. New York Prop. Ins. Underwriting Ass'n*, 815 F.2d 240, 242 (2d Cir.1987).

To the extent that a court should consider *all* motions to dismiss prudently and in the light most favorable to the nonmovant, the Court

agrees with Schweyer. *See, e.g., Hilton v. Pine Bluff Pub. Sch.*, 796 F.2d 230, 231 (8th Cir.1986) (applying the standard of dismissal under Rule *12(b)(6)* stating, "we are guided by the standard that a motion to dismiss a complaint should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief."); *Goss Graphic Sys. v. Man Roland Druckmaschinen Aktiengesellschaft*, 139 F.Supp.2d 1040, 1056 (N.D.Iowa 2001) (reasoning that when faced with a jurisdictional challenge under Rule *12(b)(3)*, although the court has the authority to look at matters outside the pleadings and may weigh evidence to satisfy itself it has the power to hear the case, the court must still consider the facts in the light most favorable to the nonmovant). However, this Court does not agree with Schweyer that there is an Eighth Circuit "policy" against dismissal under Rule 19(b) when the facts demonstrate dismissal is appropriate.

**5.** Schweyer also makes vague allegations that when fraud is involved, the corporation can be ignored. However, at the hearing on February 23, 2003, it was conceded that no fraud claim has been pleaded, nor do the allegation in the present complaint satisfy the pleading requirements under Fed.R.Civ.P. 9.

Court of Oregon did not have personal jurisdiction over them, Schweyer argued that GADC clearly was subject to personal jurisdiction, and that should be imputed to the Iowa Defendants and IBDC under an *alter ego or agency* theory; that the acts of one were the acts of the other.

However, when Schweyer faced dismissal for lack of subject matter jurisdiction, Schweyer voluntarily moved to sever the Alien Defendants including GADC. At the hearing held before Magistrate Judge Coffin on July 10, 2002, Schweyer admitted that while the Alien Defendants including GADC were in the case, subject matter jurisdiction was lacking.[6] However, Schweyer argued that GADC could be dismissed because it was not a necessary party to the action. The court asked how a breach of contract could be maintained when the signatory to the contract, GADC, was not a party. Schweyer argued that GADC was unnecessary because this was basically an action to *pierce the corporate veil* and that the Iowa Defendants were the responsible parties. The court then asked how an action to pierce the corporate veil could be maintained in the absence of the corporation. Schweyer admitted that this dismissal created problems with its theory of piercing the corporate veil of GADC.[7]

Furthermore, Karl Schweyer, the primary shareholder of Schweyer and signatory to the settlement agreement between Schweyer and GADC, states in an affidavit that *Jack Perkins* was GADC's director of international marketing and that all negotiations with GADC were done with Perkins or Ed Elston. Peter Schweyer never met or dealt with the Iowa Defendants. There is obvious prejudice to the Defendants who are named in this breach of contract action, but the signatory party who allegedly breached the contract is not named in the action. Therefore, the first factor, prejudice to Defendants, weighs heavily in favor of dismissal.

### 2. Ability to Reshape Judgment to Lessen the Prejudice

Defendant argues GADC was the only party to the contract at issue and has primary liability for the breach thereof. In fact, Schweyer sought and received a default judgment against GADC, then moved to vacate that judgment and dismiss GADC from the action. It appears Schweyer initially recognized the primacy of GADC's liability but now attempts to deny that liability because GADC's presence destroys diversity.

Schweyer argues that when the corporate veil is pierced, the Defendants will prove to be the real parties in interest and therefore GADC is not necessary. Schweyer seems to suggest its theory is self-proving and that it is unnecessary to obtain its remedies against GADC or to *prove* that Schweyer's losses were due to Defendants' improper control of GADC. In order for Schweyer to prove its theory of liability, it is necessary for GADC to be in the action. Therefore, the second factor also weighs in favor of dismissal.

### 3. Adequacy of Judgment in GADC's Absence

Schweyer argues that the Defendants, as shareholders of GADC, have adequate assets to cover the claimed damages. However, if judgment were rendered in GADC's absence, nothing would prevent Schweyer from then pursuing GADC in the liquidation proceeding in Singapore. As Magistrate Judge Coffin proffered,

> Hutchinson responded, "Well, no we don't. I—and admittedly, I was going to say that, obviously, we have to confess error on the situation with the subject matter jurisdiction. Heaven help us, I wish we'd known about this a long time ago, but at this point ... I think the fact of the matter is that the—here we have a situation where the defendants have struggled mightily to avoid having to ever confront the merits of this case. The law favors justice on the merits rather than some technicality."

**6.** At the hearing on July 10, 2002, Mr. Stephen Hutchinson, Schweyer's counsel, stated, "So, I'm saying to the court, yes, we made a mistake in the way we set up the parties in this case. We're asking the court to give us permission to take those alien defendants out so we can retain jurisdiction."

**7.** The court asked, "If you don't have a corporate defendant, why is it relevant to pierce a corporate veil? Now all you have are individual defendants, but you want to proceed as if you did have a corporate defendant and pierce the corporate veil and all that."

if a judgment indicated that the Iowa defendants engaged in wrongdoing and were the alter egos of GADC, it could possibly be used against GADC in the Singapore proceedings. Such prejudiced would be difficult to lessen or avoid with protective provisions in the judgment or by the shaping of relief by the court. Of course, a judgment in this action entered in GADC's absence may be adequate for plaintiffs especially since GADC appears to currently be a corporation without assets. Even that could possibly change, however, if plaintiff were able to successfully set aside, through the Singapore court, certain transactions and asset transfers. And, plaintiffs may obtain an unfavorable judgment in this case that still indicates that the Iowa defendants engaged in wrongdoing and were the alter egos of GADC.

(Magistrate Judge Coffin's F & R, Defendants.' Brief, Ex. A at 9.)

Again, Schweyer suggests the Court can determine GADC's liability in its absence merely by arguing that any such liability *will be* imputed to GADC's shareholders. Thus, Schweyer's proposition would allow GADC's liability to be determined in its absence; in *Nichols v. Rysavy,* the Eighth Circuit rejected such a proposition. *See Nichols v. Rysavy,* 809 F.2d 1317, 1333 (8th Cir.1987) (" 'In short the government's liability cannot be tried 'behind its back.' ' ") (quoting *Mine Safety Appliances Co. v. Forrestal,* 326 U.S. 371, 375, 66 S.Ct. 219, 90 L.Ed. 140 (1945) (quoting *State of Louisiana v. Garfield,* 211 U.S. 70, 78, 29 S.Ct. 31, 53 L.Ed. 92 (1908))). Therefore, the third factor also weighs in favor of dismissal.

#### 4. Adequate Remedy in an Alternative Forum

Defendants present an affidavit and a letter which indicate GADC's Singapore liquidation proceeding has not been closed and argue Schweyer has an alternate forum available. In resistance to this motion, Schweyer argues that the alternative remedy is merely a "spectral phantom" because GADC has been *dissolved* by a Singapore court and its assets "scattered to the wind"; but, in the same pleading, Schweyer acknowledges that GADC *has not* yet been liquidated. ("In this action, GADC is a Singapore corporation, in liquidation proceedings in Singapore, with no employees, no United States assets and no operating facilities.")

Defendants offer the affidavit of Cavinder Bull ("Bull"), associate director of Drew & Napier, LLC, a Singapore law corporation. In Bull's view, there are a number of remedies Schweyer has the right to pursue in the liquidation proceedings of GADC and in the Singapore courts under the Singapore's Companies Act ("Companies Act") including: (1) challenge the validity of GADC's security under section 310 of the Companies Act; (2) challenge the liquidator's decision to recognize or deny a claim under section 315 of the Companies Act; (3) pursue a claim for unfair preference under section 329 of the Companies Act; and (4) seek to pierce the corporate veil of GADC. Schweyer does not challenge the validity of these remedies or offer more than speculative reasons why it cannot pursue recovery in Singapore where all parties can be joined in the action.

In addition, at the hearing on February 23, 2004, the Court suggested that the Iowa state court system may also provide an alternative forum; the parties did not dispute this possibility. It appears that Schweyer has an adequate alternative forum; therefore, the fourth factor weighs heavily in favor of dismissal.

#### D. Applying the Four *Provident Tradesmens Bank & Trust Co.* Interests

To determine whether the Court can proceed in equity and good conscience without GADC, Court must also examine the four *Provident Tradesmens* interests. *Provident Tradesmens Bank & Trust Co.,* 390 U.S. at 109–11, 88 S.Ct. 733.

Under the first interest, " 'the court should consider whether there is any assurance that the plaintiff, if dismissed, could sue effectively in another forum where better joinder would be possible.' " *Nichols,* 809 F.2d at 1332. Better joinder in the present case would be the ability for Plaintiff to join both GADC and the Iowa Defendants. It appears that this would be possible in Singapore as well as in Iowa state court. Therefore, dismissal without prejudice would not foreclose Schweyer's cause of action.

The second and third interests can be examined together. Those are the Defendants' wish to avoid multiple litigation, inconsistent relief, or sole responsibility for liability it shares with GADC and GADC's interest in being joined. *Id.* at 1333. As previously discussed, Defendants' liability in this case depends on the relationship with GADC's conduct and its alleged nonperformance of the settlement agreement. Defendants and GADC both have an interest in litigating those issues in a single proceeding.

The final interest the Court must consider is the "interest of the courts and the public in complete, consistent, and efficient settlement of controversies." *Id.* In the present case, the Court notes that these judicial and public interests are better met in a forum where all responsible parties can be joined in a single proceeding, either in Singapore or in Iowa state court.

## V. CONCLUSION

Schweyer admits GADC was the sole signatory to the settlement agreement at issue in this action but argues that the acts of GADC should be imputed to Defendants under the alter ego theory because Defendants induced GADC to breach the terms of the settlement agreement. However, Schweyer simultaneously argues the Court should ignore the relationship between Defendants and GADC for purposes of diversity jurisdiction and find GADC is not an indispensable party under Rule 19(b). Although Schweyer was able to save this action from dismissal by eliminating the Alien Defendants, by doing so, it created a new basis for dismissal. For the reasons stated, the factors under Rule 19(b) weigh in favor of dismissal of this action for failure to join GADC as an indispensable party.

The Court cannot proceed in "equity and good conscience" in GADC's absence; therefore, Defendants' motion to dismiss for failure to join an indispensable party under Rule 19 (Clerk's No. 195) must be **granted.**

**IT IS SO ORDERED.**